# U.S. BANKRUPTCY COURT
## District of South Carolina

Case Number: **16-04559-jw**
Adversary Proceeding Number: **19-80060-jw**

## ORDER GRANTING IN PART AND DENYING IN PART THE MOTION FOR SUMMARY JUDGMENT

The relief set forth on the following pages, for a total of 14 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**03/04/2021**



*John E. Waites*
US Bankruptcy Judge
District of South Carolina

Entered: 03/04/2021

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Michael Dante Hughes<br>Angela Ann Hughes,<br><br>          Debtors. | CHAPTER 11<br><br>BANKRUPTCY NO.: 16-04559-jw |
| Michael Dante Hughes<br>Angela Ann Hughes,<br><br>          Plaintiffs,<br><br>vs.<br><br>U.S. Bank National Association, as Trustee for Residential Asset Securities Corporation Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS3; Ocwen Loan Servicing, LLC; PHH Mortgage Corporation;<br><br>          Defendants. | ADV. PRO. NO.: 19-80060-jw<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE MOTION FOR SUMMARY JUDGMENT** |

      This matter comes before the Court upon the Motion for Summary Judgment ("Motion") filed by U.S. Bank National Association as Trustee for Residential Asset Securities Corporation Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2007-KS3 ("U.S. Bank"), Ocwen Loan Servicing, LLC ("Ocwen"), and PHH Mortgage Corporation ("PHH") (collectively "Defendants") on December 29, 2020. On January 12, 2021, Michael Dante Hughes and Angela Ann Hughes (collectively, "Plaintiffs") filed a response to the Motion. A telephonic hearing on the Motion was held, attended by counsel for the Defendants and counsel for the Plaintiffs. At the hearing, the Court announced an oral ruling on the Motion. This Order memorializes the findings and conclusions announced by the Court at that hearing.

1

**History of the Adversary Proceeding**

Plaintiffs had previously filed a petition for relief under Chapter 11 the Bankruptcy Code on September 7, 2016. In the chapter 11 case, Plaintiffs confirmed a chapter 11 plan on August 7, 2017, which provided for the valuation and bifurcation of the mortgage loan held by U.S. Bank and serviced by Ocwen as to Plaintiffs' residential rental property better known as 6001 S. Kings Highway, Cite-C-21, Myrtle Beach, South Carolina (the "Subject Property"). PHH became the servicer of the mortgage loan upon its merger with Ocwen in April 2019.

On August 26, 2019, Plaintiffs commenced the present adversary proceeding. The adversary proceeding centers on Defendants' alleged violations of the chapter 11 plan, including improperly accounting for plan payments, as well as other mortgage servicing issues, including the alleged improper placement of force placed insurance and alleged misreporting of information On July 13, 2020, Plaintiffs amended their complaint. The amended complaint contains seven causes of action: causes of action for alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), the Real Estate Settlement Procedures Act ("RESPA") and the South Carolina Unfair Trade Practices Act ("SCUTPA"); causes of action based on alleged Tortious Interference with Contractual Business Relationship, Negligent and/or Intentional Infliction of Emotional Distress, and violations of the Court's Chapter 11 Confirmation Order. After the Court's entry of a scheduling order, the parties completed discovery and Defendants filed the present Motion.

**STANDARD OF REVIEW**

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1]  After the movant has carried its burden of

---

[1] Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

identifying issues where there is no genuine issue of material fact, the non-moving party must then produce evidence upon which a fact-finder could reasonably base a verdict in its favor.[2] If the non-moving party bears the burden of proof at trial, the moving party need only point to the absence of any fact issue in the record, and the evidentiary burden shifts to the non-moving party to show with "significant probative" evidence that there is a triable issue of fact.[3]

### I.  Negligent Infliction of Emotional Distress

Except in the context of "bystander liability," South Carolina courts have expressly rejected a cause of action for negligent infliction of emotional distress.[4] In order to prevail under a negligent infliction of emotional distress cause of action, a plaintiff must show that: "(a) the negligence of the defendant *caused death or serious physical injury* to another; (b) the plaintiff *bystander* was in close proximity *to the accident*; (c) the plaintiff and *the victim* are closely related; (d) the plaintiff *contemporaneously perceived the accident*; and (e) the plaintiff's emotional distress manifests itself by physical symptoms capable of objective diagnosis and be established *by expert testimony*."[5]

Plaintiffs have neither pled, nor presented any evidence of a cognizable claim for negligent infliction of emotional distress. South Carolina courts are clear, a negligent infliction of emotional distress claim is limited to situations involving bystander liability, such as where a plaintiff parent observes the death of their child.[6] Plaintiffs have not pled or shown any physical injury to anyone which they observed. They have not pled or shown any evidence that they perceived any accident

---

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[3] *Celotex*, 477 U.S. at 322.
[4] *Doe v. Greenville County Sch. Dist.*, 375 S.C. 63, 68, 651 S.E.2d 305, 307 (2007) ("Because South Carolina courts have limited the recognition of negligent infliction of emotional distress claims in circumstances such as the one presented in this case to bystander liability, [plaintiffs'] have not stated a claim which is cognizable under South Carolina law)(emphasis added).
[5] *Id.*
[6] *Doe,* 375 S.C. at 68, 651 S.E.2d at 307.

to another.  Therefore, summary judgment is appropriate on this cause of action.  Further, at the hearing on the Motion for Summary Judgment, the Plaintiffs withdrew their claim for negligent infliction of Emotional distress.  The cause of action is dismissed with prejudice.

## II. Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress or "outrage" arises when one by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another.[7]  To recover for this tort, the plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community," (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it."[8]  Whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery is a question of law.[9]  To establish intentional infliction of emotional distress, it is not enough that the conduct is intentional and outrageous.  It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware.[10]  As a matter of policy, courts have limited such recovery "to the most extreme cases of violent attack, where there is some especial likelihood of fright or shock."[11]  "The tort of

---

[7] *Upchurch v. New York Times Co.*, 431 S.E.2d 558, 561 (S.C. 1993).
[8] *Ford v. Hutson*, 276 S.E.2d 776, 779 (S.C. 1981) (internal citations omitted) (quoting *Vicnire v. Ford Motor Co.*, 401 A.2d 148 (Me. 1979)).
[9] *McSwain v. Shei*, 402 S.E.2d 890, 892 (S.C. 1991) overruled on other grounds by *Sabb v. S. Carolina State Univ.*, 567 S.E.2d 231 (S.C. 2002); *Shiftlet v. Allstate Ins. Co.*, 451 F. Supp. 2d 763, 773 (D.S.C. 2006) ("It is for the court to decide whether a defendant's conduct may be reasonably described as so extreme and outrageous as to warrant recovery.").
[10] *Upchurch*, 314 S.C. at 536 (affirming directed verdict in favor of defendants where there was no evidence that the defendants "targeted" plaintiffs and there was no evidence of a violent attack in plaintiffs' presence).
[11] *Id*. at 537.

outrage was designed not as a replacement for the existing tort actions. Rather, it was conceived as a remedy for tortious conduct where no remedy previously existed."[12]

"In order to prevent claims for intentional infliction of emotional distress from becoming 'a panacea for wounded feelings rather than reprehensible conduct,' the court plays a significant gatekeeping role in analyzing a defendant's motion for summary judgment."[13] The Supreme Court of South Carolina has stated that at the summary judgment stage:

> Under the heightened standard of proof for emotional distress claims[], a party cannot establish a prima facie claim for damages resulting from a defendant's tortious conduct with mere bald assertions. To permit a plaintiff to legitimately state a cause of action by simply alleging, "I suffered emotional distress" would be irreconcilable with this Court's development of the law in this area. In the words of Justice Littlejohn, the court must look for something "more"—in the form of third party witness testimony and other corroborating evidence—in order to make a prima facie showing of "severe" emotional distress.[14]

In the present matter, Plaintiffs have not pled or shown any evidence that their emotional distress manifested in physical symptoms capable of objective diagnosis, let alone by expert testimony. Plaintiffs have failed to designate any expert. Therefore, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' claim for intentional infliction of emotional distress. Further, at the hearing on the Motion, Plaintiffs withdrew this cause of action with prejudice.

### III. Tortious Interference with Contractual and other Business Relationships

The Court considers this cause of action as two separate causes of action under South Carolina Law: (1) Tortious Interference with Contract and (2) Intentional Interference with Contractual Relations. To recover in an action for tortious interference with an existing contractual

---

[12] *DeCecco v. Univ. of S. Carolina*, 918 F. Supp. 2d 471, 520 n.53 (D.S.C. 2013) (quoting *Todd v. S. Carolina Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602, 613 (S.C. Ct. App. 1984)).
[13] *Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 70 (S.C. 2007) (quoting *Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602, 611 (S.C. Ct. App. 1984).
[14] *Id.*

relationship, Plaintiffs must prove the following: (1) a contract; (2) knowledge of the contract by the tortfeasor; (3) intentional procurement by the tortfeasor *of the contract's breach*; (4) absence of justification; and (5) damages.[15] There must be a valid and enforceable contract for a cause of action for tortious interference with an existing contractual relationship to exist.[16] The plaintiff must show the defendant had knowledge of the contract at issue.[17] For a cause of action to arise a breach must be intentionally procured.[18] South Carolina does not recognize a cause of action for "recovery of pure pecuniary harm resulting from a tortfeasor's negligent interference with the plaintiff's contractual relations."[19] Further, interference is justified when it is motivated by a legitimate business purpose.[20]

Plaintiffs have failed to allege facts sufficient to support their claim. There is no allegation in the Complaint that either the contract between Plaintiffs and Ocean Lakes or the contract between Plaintiffs and their insurance company was breached. This is fatal to Plaintiffs' claim—without an actual breach of the contract, there is no cause of action. As to the Claim of Tortious Interference with Contract, the Court finds the Defendants are entitled to summary judgment.

South Carolina recognizes the tort of intentional interference with prospective contractual relations. The elements of the cause of action are (1) the intentional interference with the plaintiff's potential contractual relations, (2) for an improper purpose or by improper methods, and (3)

---

[15] *DeBerry v. McCain*, 275 S.C. 569, 274 S.E.2d 293 (1981) (emphasis added); *See also, Kinard v. Crosby*, 315 S.C. 237, 433 S.E.2d 835 (1993); *Camp v. Springs Mortgage Co.*, 310 S.C. 514, 426 S.E.2d 304 (1993); *Cooper v. Laboratory Corp. of Am. Holdings*, 150 F.3d 376 (4th Cir. 1998); *Vortex Sports & Entm't, Inc. v. Ware*, 378 S.C. 197, 662 S.E.2d 444 (Ct. App. 2008).
[16] *Columbia Management Corp. v. Resort Prop., Inc.*, 279 S.C. 370, 307 S.E.2d 228 (1983); *Parker v. Brown*, 195 S.C. 35, 10 S.E.2d 625 (1940); *Chitwood v. McMillian*, 189 S.C. 262, 1 S.E.2d 162 (1939); *Love v. Gamble*, 316 S.C. 207, 448 S.E.2d 876 (Ct. App. 1994).
[17] *See, e.g., Collins Entm't Corp. v. Coats & Coats Rental Amusement*, 355 S.C. 125, 584 S.E.2d 120 (Ct. App. 2003), aff'd, 368 S.C. 410, 629 S.E.2d 635 (S.C. 2006).
[18] *Edens & Avant Investment Properties, Inc. v. Amerada Hess Corp.*, 318 S.C. 134, 456 S.E.2d 406 (Ct. App. 1995).
[19] *Id.* 456 S.E.2d at 407.
[20] *Galliard v. Fleet Mortgage Corp.*, 880 F. Supp. 1085 (D.S.C. 1995).

causing injury to the plaintiff.[21] A plaintiff must actually demonstrate, at the outset, that he had a truly prospective (or potential) contract with a third party and the loss of that contract of other identifiable expectation.[22] Here, Plaintiffs have failed to identify a loss of an identifiable contract or expectation and therefore, the Court finds that Defendants are entitled to summary judgment.

### IV. South Carolina Unfair Trade Practices Act

Plaintiffs' South Carolina Unfair Trade Practices Act ("SCUTPA") claim is preempted to the extent it overlaps with activity regulated by the FCRA, 15 U.S.C. § 1681(b)(1)(F) as it is expressly clear in the terms of the Fair Credit Reporting Act, 15 U.S.C.A. § 1681t(b), which provides:

> (b) No requirement or prohibition may be imposed under the laws of any State –
>
> (1) with respect to any subject matter regulated under –
>
>> (H) section 1681s-2 of this title relating to the responsibilities of persons who furnish information to consumer reporting agencies . . .[23] Courts have routinely held that the FCRA preempts unfair trade practices actions under state statutes.[24] Further, courts have recognized that the FCRA preempts claims brought under State statutory law in ordering that "§ 1681t preempts all related state statutory claims."[25] Plaintiffs' allegations make clear that their SCUTPA claims relate to the servicing of their mortgage and the manner in which the Defendants reported information about their mortgage loan to the CRAs. They fall squarely within the FCRA's preemption of state law statutory claims. Thus, Plaintiffs SCUPTA claim should be dismissed as a matter of law.

---

[21] *United Educ. Distribs., L.L.C. v. Educ. Testing Serv.*, 350 S.C. 7, 10, 564 S.E.2d 324, 326 (Ct. App. 2002)
[22] *Id.*
[23] § 1681t specifically excepts just 2 state statutes – Section 54(a) of Chapter 98 of the Massachusetts laws, and section 1785.25(a) of the California Civil Code, both of which deal with inaccurate or incomplete information in a credit report.
[24] *See Potter v. FIA Card Services, N.A.*, 2012 WL 13005806 (D.S.C. Sept. 28, 2010)(Gergel, J.)(SCUTPA is preempted to the extent it overlaps with activity regulated by the FCRA); *Ross v. F.D.I.C.*, 625 F.3d 808, (4th Cir. 2010)(FCRA preempts N.C. Unfair Trade Practices claim for incorrect reporting to CRAs); *see also Shugart v. Ocwen Loan Servicing*, 747 F.Supp.2d 938 (S.D. Ohio 2010)(FCRA preempts Ohio Consumer Sales Practices Act where furnisher misrepresented status of borrower's loan to CRAs); *Dickman v. Verizon Communications, Inc.*, 876 F.Supp.2d 166 (E.D.N.Y. 2012)(NY unfair trade practices claims over incorrect and false reports to CRAs held preempted by FCRA); *Okatcha v. HSBC Bank USA, NA*, 700 F.Supp.2d 369 (S.D.N.Y. 2010)(FCRA preempts unfair trade practices claims over failure to follow reasonable procedures to ensure accuracy of information furnisher reported to CRAs).
[25] Opinion and Order, Docket 96, p. 9.

With regard to the Plaintiffs' SCUTPA allegations that are unrelated to the FCRA, to recover in an action under SCUPTA, Plaintiffs must show: (1) Defendants engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) Plaintiffs suffered monetary or property loss as a result of Defendants' unfair or deceptive act(s).[26] "An unfair trade practice has been defined as a practice which is offensive to public policy or which is immoral, unethical, or oppressive."[27] "A deceptive practice is one which has a tendency to deceive."[28] Whether an act or practice is unfair or deceptive within the meaning of the SCUTPA depends upon the surrounding facts and the impact of the transaction on the marketplace."[29] However, a mistake or bad business decision does not constitute an unfair trade practice:

> There is no support in South Carolina law for the proposition that a service person violates the unfair trade practice statute if he performs his job poorly or overlooks something which should have attracted his attention. An explicit or implicit representation that he performed his job properly, if the fault is negligence or inattention, is simply not the kind of deceptive practice the statute was intended to reach.[30]

To be actionable under SCUTPA, an unfair or deceptive practice or act must adversely affect the public interest.[31] Therefore, conduct which only affects the parties to the transaction provides no basis for a SCUTPA claim.[32] This adverse effect on the public must be proved by specific facts.[33] An impact on the public interest may be shown if the acts or practices have the potential for repetition.[34] The potential for repetition may be shown in either of two ways: (1) by

---

[26] S.C. Code Ann. §§ 39-5-10 *et seq.*; *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006).
[27] *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharm., Inc.*, 777 S.E.2d 176, 188 (S.C. 2015).
[28] *Id.*
[29] *Id.*
[30] *Clarkson v. Orkin Exterminating Co., Inc.*, 761 F.2d 189, 191 (4th Cir. 1985).
[31] *Florence Paper Co. v. Orphan*, 379 S.E.2d 289 (S.C. 1989); *Noack Enters., Inc. v. Country Corner Interiors of Hilton Head Island, Inc.*, 351 S.E.2d 347 (S.C. Ct. App. 1986).
[32] *See Key Co. v. Fameco Distribs., Inc.*, 357 S.E.2d 476 (S.C. Ct. App. 1987).
[33] *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994) ("[C]onduct which only affects the parties to the transaction provides no basis for a UTPA claim.").
[34] Singleton v. Stokes Motors, Inc., 595 S.E.2d 461, 466 (S.C. 2004).

8

showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.[35]

In the present matter, Plaintiffs have not provided any evidence in the record demonstrating that any of the alleged conduct has potential for repetition or that the same kind of actions occurred in the past. Accordingly, Plaintiff's SCUTPA claim fails as a matter of law.[36] The Court finds that Defendants are entitled to summary judgment on Plaintiff's SCUTPA cause of action.

V.  **Fair Credit Reporting Act.**

A private right of action exists under 15 U.S.C. § 1681s-2(b), which requires a creditor who has been notified by a Credit Reporting Agency ("CRA") that a consumer has disputed information furnished by that creditor to conduct a reasonable investigation of the dispute, and to report the results of the investigation to the consumer reporting agency. If any information was inaccurate, the furnisher is required to report the results of the investigation to the other CRAs.[37] The FCRA provides, in relevant part:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

---

[35] Id.
[36] See Woodson v. DLI Prop., LLC, 753 S.E. 2d 428, 435 (S.C. 2014) ("Here, the transaction only affected Petitioners, DLI, and Respondents, and therefore, Respondents' actions or inactions are not actionable under the SCUTPA, and Petitioners failed to present any evidence to the contrary.").
[37] Id.

9

> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
> > (i) modify that item of information;
> > (ii) delete that item of information; or
> > (iii) permanently block the reporting of that item of information.[38]

In the present matter, there is a factual dispute regarding whether Plaintiffs properly file an official dispute with the CRA and whether Defendants received an Automated Credit Dispute Verification from any of the CRAs upon the commencement of a dispute. Because there remains an issue of material fact to be determined by the Court, summary judgment is denied on Plaintiffs' FCRA cause of action.

## VI.    Fair Debt Collection Practices Act

To be liable under the FDCPA, a defendant must be a "debt collector" within the meaning of the statute.[39] The Fair Debt Collection Practices Act (FDCPA) defines a "debt collector" as (1) any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or (2) any person who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.[40] The Defendant USBNA, as Trustee is the owner and holder of the loan documents, any attempt made to collect the debt would not be subject to the FDCPA, as USBNA is the owner of the debt and not a "debt collector" as defined therein. The Court finds that the Defendant USBNA, as Trustee is entitled to summary judgment on the Plaintiffs' FDCPA claim.

---

[38] 15 U.S.C. § 1681s–2(b)(1).
[39] *Ramsay v. Sawyer Prop. Mgmt. of Maryland LLC*, 593 F. App'x 204, 206 (4th Cir. 2014).
[40] 15 U.S.C.S. § 1692a(6)

Ocwen and PHH assert in the Motion that they are not "debt collectors" for purposes of the FDCPA because the debt was not in default when they started servicing the loans. Generally, the determining factor is whether or not the debt was current at the time the Defendant began servicing the loan. "Critically, the FDCPA excludes from the definition of 'debt collector' any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."[41] However, courts have held that even if the debt was not in default when a person began collecting the debt, a person may be a "debt collector" for purposes of the FDCPA if that person treats the debt as being in default at that time.[42] Documentation submitted by the Defendants in support of the motion appears to show that the Plaintiffs were behind on payments at the time of the service transfer to Ocwen. As such, there remains a question of fact for trial as to whether Ocwen treated Plaintiffs debt as in default at the time of the service transfer. Therefore, summary judgment is denied as to the Defendants Ocwen and its successor-in-interest by merger, PHH.

### VII. Real Estate Settlement Procedures Act

Plaintiffs allege that the Defendants have violated RESPA by failing to respond to a qualified written request ("QWR"). [Dkt. 66, pg. 21 p. 207]. RESPA defines a QWR as:

> "a written correspondence . . . that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."[43]

---

[41] *Ramsay v. Sawyer Prop. Mgmt. of Maryland LLC*, 593 F. App'x 204, 206 (4th Cir. 2014)(citing 15 U.S.C. § 1692a(6)(F)(iii)).
[42] *See Lupo v. JPMorgan Chase Bank, N.A.*, C/A No. DKC 14-0475, slip op, 2015 WL 5714641 at *20 (D.Md. Sept. 28, 2015); *Shugart v. Ocwen Loan Servicing, LLC*, 747 F.Supp.2d 938, 942-43 (S.D. Ohio 2010).
[43] 12 U.S.C. § 2605(e)(1)(B)

If a borrower sends a QWR to a servicer of a federally related mortgage loan, and the servicer fails to adequately respond under the statute to the borrower's request, then the servicer faces liability for actual damages suffered by the borrower . . ..".[44] Regulation X, RESPA's implementing regulation, permits a servicer to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests."[45] If a servicer establishes a designated QWR address, then the borrower must deliver its request to that office in order for the inquiry to be a qualified written request.[46] "Failure to send the [alleged] QWR to the designated address for the receipt and handling of QWRs does not trigger the servicer's duties under RESPA."[47] When an alleged QWR fails to meet the requirements of RESPA and its implementing regulation, it "amounts to nothing more than general correspondence between a borrower and servicer."[48] Defendants did not receive a QWR at the designated address and thus cannot be held liable for any violation related to a failure to respond. Therefore, the court finds that Defendants are entitled to summary judgment on Plaintiffs' RESPA cause of action as it relates to Plaintiffs' claim for failure to respond to a QWR and hereby grants the same.

As to Plaintiffs' allegations that Defendants violated Section 2609 of RESPA, because no private right of action under this section was created by Congress, the Court finds that Defendants are entitled to summary judgment.

Plaintiffs also allege that Defendants violated RESPA by creating an unauthorized escrow account and force-placing insurance on the Subject Property; however, the Defendants have alleged that no force placed insurance policy was acquired by Defendants for the Subject

---

[44] *Id*. § 2605(e)-(f)
[45] 24 C.F.R. § 3500.21(e)(1).
[46] *Peters v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 33690 (E.D. Va. Mar. 18, 2015) *citing Roth v. CitiMortgage, Inc.,* 756 F.3d 178, 181 (2d Cir. 2014)
[47] *Id. citing Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1145 (10th Cir. 2013)
[48] *Id.*

Property. With respect to the Plaintiffs' allegations of RESPA violations related to the creation of an unauthorized escrow account and the forced placement of insurance, the court finds that there remains an issue of material fact and therefore denies summary judgment.

### VIII.     Compliance with Confirmed Chapter 11 Plan

As there remains a factual dispute between the parties on the interpretation of the Confirmed Chapter 11 Plan and the application of Plaintiff's payments by Defendants under the loan, Defendant's Motion for summary judgment is denied as to Plaintiffs' cause of action for contempt regarding compliance with terms of the Confirmed Chapter 11 Plan.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted as to the following causes of action:

> Negligent Infliction of Emotional Distress
> Intentional Infliction of Emotional Distress
> Tortious Interference with Contractual and other Business Relationships
> South Carolina Unfair Trade Practices Act
> Fair Debt Collection Practices Act as to Defendant U.S. Bank only
> Real Estate Settlement Procedures Act as to violations relating to the failure to respond to a Qualified Written Request and violations under §2609 of the statute.

Defendants' motion for Summary Judgment is denied as to the following causes of action:

> Fair Credit Reporting Act
> Fair Debt Collections Practices Act as to Defendants Ocwen and PHH
> Real Estate Settlement Procedures Act as to violations relating to escrow accounts
> Contempt for violations of the terms of the Confirmed Chapter 11 Plan.

A trial has been scheduled for these remaining causes of action for **March 22, 2021 at 10:00 AM** at the J. Bratton Davis United States Bankruptcy Courthouse, 1100 Laurel Street, Columbia South Carolina, 29201.

**AND IT IS SO ORDERED!**